IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| LAINEY C., by and through her Parents, Maile and Romeo C., | ) ) ) | CIVIL NO. 12-00223 SOM/BMK |
| Plaintiffs, | ) ) | ORDER AFFIRMING THE DECISION OF THE ADMINISTRATIVE |
| vs. | ) ) | HEARINGS OFFICER |
| STATE OF HAWAII, DEPARTMENT OF EDUCATION, | ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

**ORDER AFFIRMING THE DECISION OF
THE ADMINISTRATIVE HEARINGS OFFICER**

## I.        INTRODUCTION.

This court affirms the Findings of Fact, Conclusions of Law and Decision ("Decision") of March 27, 2012, issued by Richard A. Young, an experienced Administrative Hearings Officer. That decision examined whether Defendant Department of Education for the State of Hawaii ("DOE") had denied Plaintiff Lainey C. the Free and Appropriate Public Education ("FAPE") required by the Individuals with Disabilities Education Act ("IDEA").  The Hearings Officer determined that the DOE had denied Lainey a FAPE with respect to the Individualized Education Program ("IEP") of January 25, 2011, but had offered Lainey a FAPE with respect to an IEP of August 4, 2011.  Determining that the unilateral placement of Lainey at American Renaissance Academy, a private school, had been an appropriate placement, and that a FAPE had been denied until the IEP was offered to Lainey on August 4,

2011, the Hearings Officer ordered the DOE to reimburse the parents of Lainey the private school tuition incurred until August 4, 2011.

Lainey and her parents do not appeal the part of the Decision concerning the IEP of January 2011.  They appeal only the Hearings Officer's determination that a FAPE was offered to Lainey via the IEP of August 4, 2011.  The appeal uses a shotgun-type approach, and the issues on appeal are not clear.  After struggling to determine what precise matters were being appealed, this court, on January 25, 2013, asked Lainey to file a supplemental brief that clearly identified the issues raised in this appeal, explained where each issue was raised to the Hearings Officer, and stated what findings or conclusions relating to the issues were challenged and what evidence or law supported that challenge.  See ECF No. 31.

On February 15, 2013, Lainey filed her supplemental brief.  The court gleans from that brief that Lainey is arguing that the August 2011 IEP did not offer Lainey a FAPE because:

1.  The Hearings Officer erred in determining that Lainey did not need a one-to-one aide.

2.  The August 2011 IEP lacked appropriate goals addressing Lainey's socialization needs.  This meant that there was no way to measure her progress and identify responsible providers.

3.  Although the August 2011 IEP added social skills group training, its failure to include annual goals for socialization skills had the effect of denying the parents of Lainey a chance to meaningfully participate in developing that portion of the IEP.  The parents had no way of knowing what the social skills group training would involve and so could not have informed discussions about that training.

4.  The academic goals were not based on adequate Present Levels of Educational Performance ("PLEPs").

5.  Although Lainey's PLEPs included sensory issues, the August 2011 IEP lacked appropriate goals and objectives addressing her sensory needs.

6.  Mainstreaming was inappropriate.

The court affirms the Hearings Officer.  To the extent Lainey raises issues on this appeal that were not presented to the Hearings Officer, she may not litigate those issues now. With respect to the other issues raised on appeal, Lainey has failed to meet her burden on appeal.

## II.        STATUTORY FRAMEWORK.

"The IDEA is a comprehensive educational scheme, conferring on disabled students a substantive right to public education."  Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298, 1300 (9th Cir. 1992) (citing Honig v. Doe, 484 U.S. 305, 310 (1988)).  The IDEA ensures that "all children with disabilities

have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living."  20 U.S.C. § 1400(d)(1)(A).

> According to the IDEA, a FAPE consists of:
>
> special education and services that-
>
> (A) have been provided at public expense, under public supervision and direction, and without charge;
>
> (B) meet the school standards of the State educational agency;
>
> (C) include an appropriate preschool, elementary school or secondary school education in the State involved; and
>
> (D) are provided in conformity with the individualized education program required under section 1414(d) of this title.

20 U.S.C. § 1401(9).  To provide a FAPE in compliance with the IDEA, a state educational agency receiving federal funds must evaluate a student, determine whether that student is eligible for special education and services, conduct and implement an IEP, and determine an appropriate educational placement for the student.  20 U.S.C. § 1414.

The student's FAPE must be "tailored to the unique needs of the handicapped child" through an IEP.  Board of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 181 (1982) (citing 20 U.S.C. § 1401(18)).  The IEP, which is prepared at a meeting between a qualified representative of the local

4

educational agency, the child's teacher, the child's parents or guardian, and, when appropriate, the child, consists of a written document containing:

> (i) A statement of the present levels of educational performance of the child;
>
> (ii) A statement of annual goals, including short-term instructional objectives;
>
> (iii) A statement of the specific educational services to be provided to the child, and the extent to which the child will be able to participate in regular educational programs;
>
> . . . .
>
> (v) The projected date for initiation and anticipated duration of these services; and
>
> (vi) Appropriate objective criteria and evaluation procedures and schedules for determining on at least an annual basis, whether instructional objectives are being achieved.

34 C.F.R. § 222.50; see also 20 U.S.C. § 1414(d).  Local or regional educational agencies must review and, when appropriate, revise each child's IEP at least annually.  20 U.S.C. § 1414(d)(4).  A school district must have an IEP in effect for each child with a disability at the beginning of each school year.  See 20 U.S.C. § 1414(d)(2)(A); 34 C.F.R. § 300.323(a).

"Parental involvement is a central feature of the IDEA."  Hoeft, 967 F.2d at 1300.  "Parents participate along with teachers and school district representatives in the process of

determining what constitutes a 'free appropriate education' for each disabled child." Id.

Violations of the IDEA may arise in two situations. First, a school district, in creating and implementing an IEP, may run afoul of the IDEA's procedural requirements. Rowley, 458 U.S. at 205-06. Second, a school district may become liable for a substantive violation of the IDEA by drafting an IEP that is not reasonably calculated to enable the child to receive educational benefits. Id. at 206-07. The school district must provide the student with a FAPE that is "appropriately designed and implemented so as to convey" to the student a "meaningful" benefit. Adams v. Oregon, 195 F.3d 1141, 1149 (9th Cir. 1999).

While the IDEA guarantees certain procedural safeguards for children and parents, the Ninth Circuit has recognized that not every procedural violation results in denial of a FAPE. See e.g., L.M. v. Capistrano Unified Sch. Dist., 556 F.3d 900, 909 (9th Cir. 2009)("Procedural flaws in the IEP process do not always amount to the denial of a FAPE."). Procedural flaws in the IEP process only deny a child a FAPE when the flaws affect the "substantive rights" of a parent or child. Id. Such substantive rights include the loss of a child's educational opportunity or an infringement on a parent's opportunity to participate in the IEP process. Id.

When a public school fails to provide a FAPE, and a parent establishes that placement at a private school is appropriate, the IDEA authorizes reimbursement to the parent. See 20 U.S.C. § 1412 (a)(10)(C)(ii); Sch. Comm. of Burlington v. Dep't of Ed. of Mass., 471 U.S. 359, 370 (1985).  In addition, the IDEA includes a "stay put" provision that permits a child to stay in the child's current educational placement during the pendency of any administrative or judicial proceeding regarding a due process complaint notice.  See 20 U.S.C. § 1415(j); 34 C.F.R. § 300.518(a), (d).  A plaintiff may seek a "stay put" order in the district court even if "stay put" issues were not litigated in administrative proceedings.  See N.D. v. Haw. Dep't of Educ., 600 F.3d 1104, 1110-11 (9th Cir. 2010).

**III.      STANDARD OF REVIEW.**

Any party aggrieved by a decision of a due process hearings officer under the IDEA may appeal the findings and decision to any state court or a United States district court. 20 U.S.C. § 1415(i)(2).  The party challenging the administrative decision has the burden of proving deficiencies in the administrative decision.  Seattle Sch. Dist., No. 1 v. B.S., 82 F.3d 1493, 1498 (9th Cir. 1996).

When evaluating an appeal of an administrative decision, a court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence

at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C).

Under the IDEA, district courts review the hearings officer's conclusions de novo.  Ashland Sch. Dist. v. Parents of Student E.H., 587 F.3d 1175, 1182 (9th Cir. 2009).  However, de novo under the IDEA "carries with it the implied requirement that due weight shall be given to [the administrative] proceedings." Id. (quoting Rowley, 458 U.S. at 206).  A district court "must give deference to the state hearing officer's findings, . . . and avoid substituting its own notions of sound educational policy for those of the school authorities which it reviews." Id. (internal quotation marks, modifications, and citations omitted).  A court must consider the findings carefully and respond to the hearings officer's resolution of each material issue.  Capistrano Unified Sch. Dist. v. Warternberg, 59 F.3d 884, 891 (9th Cir. 1995).  The court, however, is free to accept the findings in part or in whole.  Id.  Greater deference is appropriate when the findings are "thorough and careful."  JG v. Douglas County Sch. Dist., 552 F.3d 786, 793 (9th Cir. 2008). The Third Circuit has stated that "special weight" is due when the hearings officer has heard live testimony and "found the testimony of one witness to be more worthy of belief than the contradictory testimony of another witness," and "a District

Court must accept the state agency's credibility determinations unless the nontestimonial, extrinsic evidence in the record would justify a contrary conclusion." <u>L.E. v. Ramsey Bd. of Educ.</u>, 435 F.3d 384, 389 n.4 (3d Cir. 2006) (citations omitted).

IV.      **FACTUAL BACKGROUND**.

It is undisputed that 12-year-old Lainey is autistic and entitled to receive special education services under the IDEA.  Compared with other autistic students, Lainey is a "high-functioning individual."  <u>See</u> Decision of Hearings Officer, Finding of Fact 1 ("FoF"), March 27, 2012.  It is also undisputed that, when she was in preschool, Lainey was eligible to receive those services, but that the services stopped when she was in kindergarten.  In the second grade, Lainey again received special education services, but those services stopped when she was in the third grade.  <u>See</u> FoF 2 and 5.

In the 2010-11 school year, Lainey was in the fifth grade at a public school as a general education student.  FoF 7. On September 6, 2010, her parents sent the DOE a letter requesting an IEP for her.  FoF 8.  At that time, her parents were concerned with Lainey's test scores in math and reading. Lainey's teacher was more concerned about her inattentiveness. <u>See</u> FoF 8 and 9.

Lainey's general education public school teacher had 32 students in her class at the beginning of the 2010-11 school

year.  See FoF 11.  In October 2010, the school added another teacher.  This allowed the school to reduce the number of student's in Lainey's class to 22.  Id.  The teacher subdivided her class into small groups of four to five students to teach socialization and social etiquette skills.  These small groups taught the children to interact, to help and care for each other, to share things, and to "group problem solve."  See FoF 12.

An IEP was developed on January 25, 2011.  Another IEP was developed on August 4, 2011.

Lainey began attending a private school in the summer of 2011.  Her parents wrote to the DOE in July 2011, asking the DOE to pay for the private school tuition.

On September 9, 2011, Lainey and her parents, through their attorneys, requested an Impartial Hearing, raising several issues.

A three-day hearing before the Hearings Officer was conducted from January 31 to February 2, 2012.  On March 27, 2012, after receiving post-hearing briefing, the Hearings Officer issued his Decision.  See Administrative Record on Appeal ("ROA") at 131-53.

**A.    There is No Argument Before This Court Concerning the Hearings Officer's Determination that Lainey Was Not Due for Her Three-Year Evaluation.**

Lainey's request for Impartial Hearing first argued that the DOE had failed to conduct the required three-year evaluation in 2011.  See ROA at 3.  This argument was based on section 8-60-35(b)(2) of the Hawaii Administrative Rules, which requires reevaluation of students at least once every three years.

The Hearings Officer rejected the argument, determining that Lainey had last been deemed eligible for special education and related services on January 25, 2011.  Because Lainey had been evaluated as of January 2011, the Hearings Officer determined that the applicable three-year reevaluation deadline was not until January 2014.  See ROA at 143.

Lainey has not appealed this part of the Decision.

**B.    The Hearings Officer Determined that Lainey Was Properly Assessed.**

Lainey's request for Impartial Hearing argued that, "Pursuant to § 300.304(c)(4) DOE failed to assess[] Lainey in all areas related to the suspected disability."  Section 300.304(c)(4) requires the DOE to ensure that "[t]he child is assessed in all areas related to the suspected disability, including, if appropriate, health, vision, hearing, social and emotional status, general intelligence, academic performance, communicative status, and motor abilities."

11

The Hearings Officer determined that the DOE "assessed Student through cognitive, academic, and fine motor assessments" and noted that a "psychiatric evaluation was also considered." ROA at 145. "Based on the assessment reports and psychiatric evaluation," the Hearings Officer concluded that Lainey had not shown that the DOE failed to properly assess her. Id.

### C. The Hearings Officer Determined that Mainstreaming of Lainey Was Proper.

Lainey's request for Impartial Hearing next argued that "mainstreaming" her was "inappropriate due to Lainey's unique needs related to her inattention and lack of socialization ability and the teacher's inability to address these needs without appropriate supplementary aids and services which have not been authorized." ROA at 4. The Hearings Officer rejected this argument.

Section 8-60-15 of the Hawaii Administrative Rules states:

> (1) To the maximum extent appropriate, students with disabilities . . . are educated with students who are nondisabled; and
>
> (2) Special classes, separate schooling, or other removal of students with disabilities from the regular educational environment occurs only if the nature or severity of the disability is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.

The Hearings Officer determined, "Based upon the relatively low level of Student's disability, the supplemental aids and services are appropriate to achieve satisfactory performance in a regular education classroom."  ROA at 147.

> **D.   The Hearings Officer Determined that the Goals and Objectives Regarding Lainey's Socialization and Sensory Needs Were Adequate.**

Lainey's request for Impartial Hearing next argued about her socialization and sensory needs.  She contended that the IEP of January 25, 2011, failed to contain PLEPs regarding "socialization skills even though it was clearly a unique educational need."  Lainey argued that the IEP of January 25, 2011, lacked annual goals and short-term objectives to address socialization issues.  Lainey noted that the IEP of August 4, 2011, contained one social goal addressing her frustration and lack of personal space, but argued that it failed to address "how to socialize."  Although the IEP of August 4, 2011, included social skills group training, Lainey complained that, because there were no annual socialization goals in that IEP, her parents could not understand what the social skills group was working on. Lainey also complained that three of the five annual goals in the IEP of August 4, 2011, were academic, even though she had appropriate "grade level academic abilities."

Lainey also contended that, although the IEPs of January 25 and August 4, 2011, identified sensory issues, they

13

failed to contain annual goals concerning sensory issues and provided no services to address those issues.

The Hearings Officer agreed that the IEP of January 25, 2011, failed to properly address Lainey's lack of socialization skills, as well as her inattentiveness. See ROA at 146-47. The Hearings Officer determined that this was a denial of a FAPE. Id. at 147. This determination has not been appealed.

The Hearings Officer reached a different conclusion with respect to the IEP of August 4, 2011. That IEP contained a PLEP for "Social/emotional/behavioral skills." See Petitioners' Ex. 3 at 12. That PLEP stated:

> Lainey is currently in the 4th grade. According to her teacher's report, they perceive her as displaying minimal outwardly problematic behaviors at about the same frequency as others her age. They did, however, indicate inattentive and off task behaviors in that Lainey sometimes seems to drift and fidget during instruction. Their ratings place her in the low range for school problems. This implies that they perceive Lainey as having some problematic behaviors (i.e. attention span, working in class) that may interfere with her academic performance.

Id.

The Hearings Officer noted that the IEP contained six pages of goals and objectives. He stated:

> To address Student's socialization and communication needs, one of the goals and objectives in this IEP called for Student to work independently, have necessary materials, follow an organizational checklist, and participate appropriately in large academic

14

group settings.  Another goal in the August
4, 2011, IEP called for Student to use coping
skills, appropriate personal space, to take
on the perspective of others, to control
emotions, work on body language, stay on
topic, and refrain from inappropriate
comments.

ROA at 149-50.

Although a psychologist testified that the social
skills group training for 30 minutes per week and the other
offered services were not enough, the Hearings Officer disagreed.
The Hearings Officer was persuaded by a behavioral health
specialist who testified that the "social skills group training,
autism consultation for 4 hours per month, modeling, and
preferential seating next to on-task peer were appropriate to
address Student's behavioral needs."  ROA at 150.  The Hearings
Officer noted that these same items also addressed her
socialization needs.  Id.  The Hearings Officer noted that,
according to the behavioral health specialist, Lainey "did not
need a 1:1 as this could lead to social isolation and less
independence."  Id.

The Hearings Officer noted that, although three of the
five goals addressed Lainey's academic needs, Lainey was in no
position to complain about their inclusion because her parents
had asked that those academic goals be included in the IEP.  See
ROA at 150.

The Hearings Officer determined that the IEP of August 4, 2011, had appropriate goals addressing Lainey's socialization and sensory issues.  See ROA at 150-51.

## V.        ANALYSIS.

Lainey and her parents only appeal the Decision to the extent it determined that the IEP of August 4, 2011, offered her a FAPE.

### A.   Because Lainey Did Not Raise Any PLEP Inadequacy Before the Hearings Officer, She Failed to Exhaust Her Administrative Remedy With Respect to That Issue.

Lainey argues that the academic goals in the IEP of August 2011 were not based on adequate academic PLEPs.  Because that argument was not properly raised before the Hearings Officer, it cannot be the subject of the appeal to this court.

In Payne v. Peninsula School District, 653 F.3d 863, 874-75 (9th Cir. 2011), the Ninth Circuit, sitting en banc, determined that, if a remedy is available under the IDEA, the IDEA requires exhaustion of a claim for that remedy.  The Ninth Circuit stated, "[I]f a disabled student files suit under the ADA and challenges the school district's failure to accommodate his special needs and seeks damages for the costs of a private school education, the IDEA requires exhaustion regardless of whether such a remedy is available under the ADA, or whether the IDEA is mentioned in the prayer for relief."  Id. at 875.  Similarly, "exhaustion is required in cases where a plaintiff is seeking to

enforce rights that arise as a result of a denial of a free appropriate public education, whether pled as an IDEA claim or any other claim that relies on the denial of a FAPE to provide the basis for the cause of action (for instance, a claim for damages under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, premised on a denial of a FAPE)."

Lainey argues to this court that the August 2011 IEP's failure to include appropriate reading and math PLEPs constituted the denial of a FAPE.  The Ninth Circuit has noted that the "scope of the administrative hearing mandated by section 1415(b)(2) is limited to the 'complaint' raised to obtain the hearing."  County of San Diego v. Cal. Special Educ. Hearing Office, 93 F.3d 1458, 1465 (9th Cir. 1996).  Because Lainey did not include this issue in her request for Impartial Hearing, the issue was not before the Hearings Officer.  See M.D. v. Dep't of Educ., 864 F. Supp. 2d 993, 1004 (D. Haw. 2012).  At most, Lainey's due process hearing request stated, "The information in the PLEP indicates that Lainey has grade level academic abilities yet 3 of 5 annual goals in the 8/4/11 IEP are academic."  This statement did not raise before the Hearings Officer the issue of whether the academic goals were based on adequate PLEPs. Instead, the statement suggests that Lainey's "grade level academic abilities" should have led to PLEPs that were not academic at all.

Under Payne, Lainey was required to exhaust her claims before appealing any decision on those issues to this court. Having failed to properly raise the issue to the Hearings Officer, Lainey may not now raise it for the first time on appeal.  See Marc M. v. Dept. of Educ., 762 F. Supp. 2d 1235, 1241 (D. Haw. 2011) ("arguments not raised in front of a hearings officer cannot be raised for the first time on appeal to the district court").

> **B.   The Court is Not Persuaded by Lainey's Argument That Her Socialization Needs Were Known, But Not Appropriately Identified or Addressed in the IEP of August 4, 2011.**

Lainey argues that, although her educational needs were known, they were not appropriately identified or addressed in the IEP of August 4, 2011.  On pages 12 and 13 of the Opening Brief, Lainey argues that the evidence establishes that she is "significantly delayed in the development of social communication and most of the skills that are necessary to have normal and effective social interactions with adults and peers" and that "her lack [of] social and emotional abilities [is] creating a significant barrier to educational achievement and social development."  On pages 20 through 31 of the Opening Brief, Lainey complains that the annual goals concerning her socialization were inadequate.  Lainey again asserts on pages 7

to 11 of her supplemental brief that the August 2011 IEP lacked

appropriate goals addressing Lainey's socialization skills.[1]

Lainey challenges the Findings of Fact made by the

Hearings Officer concerning the socialization goals contained in

the August 2011 IEP.  Specifically, Lainey challenges Findings of

Fact 62, 63, 64, 68, 69, and 71, which state:

> 62.  The August 4, 2011 IEP has multiple
> goals, with short-term objectives which
> include working independently and remaining
> attentive, to be organized and follow an
> organizational checklist, and to participate
> appropriately in large academic group
> settings.  Additionally, other short-term
> goals were added such as utilizing coping
> skills by asking for a break, taking a short
> walk, or asking for assistance.
>
> 63.  The August 4, 2011 IEP has 6 pages of
> goals and objectives.  To address Student's
> socialization and communication needs, one of
> the goals and objectives in this IEP called

---

[1]To the extent Lainey is arguing that the annual goals
pertaining to things other than socialization were insufficient,
she failed to exhaust those arguments.  At most, her request for
Impartial Hearing states with respect to annual goals, "In the
IEP of August 4, 2011, a social skills group training has been
added but since there are no annual goals for socialization
skills there is no way for Parents to understand what this group
might be working on thus denying them meaningful parental
participation."  ROA at 4.  Accordingly, when she mentions on
page 23 of her opening brief that the annual goals do not
appropriately address Lainey's behavioral needs, autism, or
expressive-receptive language disorder, those claims have not
been exhausted and may not be raised for the first time on this
appeal.  Nor did Lainey raise before the Hearings Officer the
issues of whether the goals concerning socialization were
measurable or who was responsible for implementing those goals.
Lainey similarly failed to raise the issue of whether a social
skills program was necessary to the Hearings Officer.  Having
failed to properly raise those issues below, she may not raise
them for the first time on this appeal.

for Student to work independently, have
necessary materials, follow an organizational
checklist, and participate appropriately in
large academic group settings.

64. Another goal in the August 4, 2011 IEP
called for Student to use coping skills,
appropriate personal space, to take on the
perspective of others, to control emotions,
work on body language, stay on topic, and
refrain from inappropriate comments.

. . . .

68. However, the behavioral health specialist
opined that the social skills group training,
autism consultation for 4 hours per month,
modeling, and preferential seating next to
on-task peer were appropriate to address
Student's behavioral needs.

69. The behavioral health specialist further
opined that Student did not need a 1:1, as
having a 1:1 can lead to social isolation and
less independence.

. . . .

71. It is noted that the August 4, 2011 IEP
doubled Student's special education minutes
to 300 minutes per week.  Additionally, 4
hours per month of autism consultation to
discuss new strategies, and social skills
group training for 30 minutes per week, were
added.  Further, the August 4, 2011 IEP added
modeling and preferential seating next to
on-task peer to address Student's
socialization needs.  As testified by the
SSC, these added services and supplemental
aids were recommended in the evaluations done
preceding the development of the August 4,
2011 IEP.

Lainey is challenging not whether goals were included in the IEP

but whether the stated goals were appropriate.

For example, on page 8 of her supplemental brief, Lainey argues that Findings of Fact 62 and 63 are clear error because they do not address how Lainey was to socialize.  Page 6 of the supplemental brief argues that Findings of Fact 68 and 69 are clear error because they address behavioral, not socialization, needs.  But Findings of Fact 68 and 69 simply describe testimony of the behavioral health specialist.  Lainey does not say, much less show, that the summaries are inaccurate or somehow misstate actual testimony.  Finding of Fact 63 specifically addresses the August 2011 IEP's goals for socialization: "To address Student's socialization and communication needs, one of the goals and objectives in this IEP called for Student to work independently, have necessary materials, follow an organizational checklist, and participate appropriately in large academic group settings."

Lainey also argues that the Hearings Officer erred in Finding of Fact 69 when he stated that, according to a behavioral health specialist, Lainey did not need a one-to-one aide, as that could lead to social isolation and less independence.  It is unclear why this finding is erroneous.  Shelley Dalton, a behavioral health specialist, testified that, at the IEP meeting of August 4, 2011, the team wanted to try a social skills group and autism consultation before implementing a one-to-one aide.[2]

_____

[2]Lainey argues to this court that the decision regarding the one-to-one aide was not Dalton's decision to make.  This argument

See Transcript at 640-41.  Dalton testified that, when a student is shadowed by an adult helper, "the risk is that you become even more socially isolated, that you become less independent."  Id. at 640.  Dalton further testified that, "It doesn't necessarily improve socialization."  Id.  While Dalton did not testify that Lainey would never need a one-to-one aide, Finding of Fact 69 appears to draw the inference that a one-to-one aide was not advisable at the time in issue.  This is an inference that can reasonably be drawn from Dalton's testimony.

Lainey cites the testimony of her teacher to show the alleged error by the Hearings Officer with respect to the one-to-one aide.  Lainey's teacher testified that, in the first semester of Lainey's fourth-grade year, it would have been "helpful" to have an aide for Lainey.  See Hazama Test. at 35, ECF No. 37-1 at Page Id #341.  However, being "helpful" is not the same as being necessary for provision of a FAPE.

Lainey also argues that, according to Janet R. Fitzgerald, a psychologist, Lainey needed a social skills program with "a lot of direct practice, one on one learning about emotions in herself and learning about perspectives of other people before it would make sense for her to really do a lot of social skills work with other people."  See Transcript at 317.

_____

assumes Dalton made that decision when, in fact, the decision not to give Lainey a one-to-one aide was made by her IEP team, not Dalton.

22

Fitzgerald testified that the importance of daily practice with respect to social reciprocity and conversation skills "cannot be overstated." Id. at 322. Fitzgerald recommended that Lainey receive "at least 15 to 20 hours per week" of intensive direct teaching and behavioral coaching "to address her communication and social skills." See Petitioners' Exhibit 8 at 65. The Hearings Officer acknowledged Fitzgerald's opinion in Finding of Fact 67, which stated, "Psychologist J.F. opined that the social skills group training for 30 minutes per week and other services were not enough as Student needs more intense services." The Hearings Officer was not required to order a one-to-one aide based on Fitzgerald's opinion. Faced with testimony by Dalton, the Hearings Officer determined that a one-to-one aide was not necessary under the circumstances. This court does not view this determination as unsupported by the record or otherwise erroneous.

The Hearings Officer appears to have based his Decision as to the one-to-one aide on a number of factors. For example, the IEP of August 4, 2011, offered Lainey 300 minutes per week of special education services in the general education setting. See FoFs 66 and 71; Petitioners' Ex. 3 at 16 and 24. Lainey was also to receive 30 minutes per week of social skills group training and four hours per month of "Autism consultation--discuss new strategies." See FoF 71. The Hearings Officer determined that the IEP of August 4, 2011, added modeling and

preferential seating to address socialization needs.  See FoFs 66 and 71.  The Hearings Officer, noting testimony on behalf of the DOE, found that the strategies in the IEP of August 4, 2011, addressed Lainey's needs.  See FoF 72.

Lainey fails to meet her burden on this appeal of demonstrating error by the Hearings Officer with respect to the issue of whether the August 2011 IEP denied her a FAPE by failing to appropriately identify or address her known educational needs.

### C.   Mainstreaming.

Lainey contends that the "fully mainstreamed general education classroom without appropriate supports in this case was inappropriate."  See Opening Brief at 13 and 31.  The Hearings Officer disagreed, concluding that the DOE was offering appropriate supports when it offered general education in connection with occupational therapy consultation once a week, a visual schedule/planner, a small group setting, extended time, self-regulation strategies, group counseling once a week, and checking of assignments.  See Conclusions of Law at 18, ROA at 147.  The Hearings Officer determined that these supplemental aids and services, when examined in the light of Lainey's relatively "low level" of disability, were appropriate.  Id.

Although Lainey argues that her "placement in a large, general education classroom was not based on her needs as identified in her IEP in order for her to receive educational

24

benefits," <u>see</u> Lainey's Supplemental Brief at 17-18, ECF No. 35, Lainey does not explain with citations to the record and law why something other than mainstream education was required.  She therefore shows no error.

> **D.   Lainey Has Not Met Her Burden of Demonstrating that Her Parents Were Denied a Chance to Meaningfully Participate in the Development of the August 2011 IEP.**

In the Supplemental Aids and Services section of the IEP of August 2011, Lainey was offered 30 minutes per week of social skills group training in the general education setting. Lainey argues that her parents were deprived of meaningful participation in the formation of her IEP because they could not tell from the IEP what the social skills group training consisted of.[3]  Lainey's father testified that he heard his wife ask Dalton, the behavioral health specialist, whether Dalton would be responsible for the social skills group training.  He testified that Dalton told his wife that Dalton might be responsible for the group training, but someone else might be.  <u>See</u> Test. at 286-87, ECF No. 37-1, Page ID #337.

Lainey fails to meet her burden on this appeal of demonstrating that her parents were denied a chance to

---

[3]To the extent Lainey is arguing that her parents were denied meaningful participation because there were inadequate socialization goals in the IEP of August 2011, Lainey has failed to demonstrate the inadequacy of the goals with respect to her socialization.

meaningfully participate in the formation of her August 2011 IEP based on a reference to social skills group training.  It was incumbent on Lainey to explain to this court how she was denied a FAPE through an offer of 30 minutes per week of social skills group training.  Instead of doing so, Lainey generally cites 34 CFR § 300.322, without describing which part of it was allegedly violated.  This court has no duty to comb through the record for Lainey.  Without an explanation as to why Dalton should have known who would be conducting the group sessions and why her failure to identify a specific person denied Lainey's parents their right to meaningfully participate in developing the IEP, Lainey shows no error.

### E.    The IEP of August 2011 Adequately Addresses Sensory Issues.

In the PLEPs contained in the IEP of August 2011, the IEP team notes that Lainey is often distracted by background noise, noisy environments, and people moving around.  The PLEPs then state that "Lainey's sensory processing difficulties appear to be impacting on her ability to focus and attend within her learning environment.  She would benefit from supports (redirection, visual schedules, learning strategies, etc.) to help her within her classroom setting.  The strategies can also be carried over into the home setting."  The PLEPs also note, "Most of her sensory behavior like repetitive tapping and moving,

was observed to be within a similar range to that of her peers in duration, frequency and intensity."

Lainey's due process hearing request stated that, despite the PLEPs' reference to "sensory issues," the IEP of August 2011 lacked annual goals and services addressing the "sensory issues."  <u>See</u> ECF No. 36-3 at Page ID #315.

The Hearings Officer concluded that Lainey had failed to demonstrate that the IEP of August 2011 lacked goals, or contained inappropriate goals, addressing Lainey's sensory issues.  <u>See</u> Conclusions of Law at 21-22.

On this appeal, Lainey fails to meet her burden of demonstrating that the Hearings Officer erred.  Lainey does not, for example, demonstrate that just because a PLEP discusses sensory issues, an annual goal concerning those sensory issues must be part of an IEP.  Lainey may not simply raise an issue and leave it to this court to determine whether she is correct or not.

## VI.      CONCLUSION.

To the extent Lainey failed to raise issues before the Hearings Officer, she may not raise them for the first time on this appeal.  With respect to issues she did raise, the court affirms for the reasons stated above.

IT IS SO ORDERED.

DATED: Honolulu, April 30, 2013.



/s/ Susan Oki Mollway

Susan Oki Mollway
Chief United States District
Judge

Lainey C., et al. v. State of Hawaii, Department of Educ., Civ. No. 12-00223 SOM/BMK; ORDER AFFIRMING THE DECISION OF THE ADMINISTRATIVE HEARINGS OFFICER